**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

------------------------------------------------------------

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| Plaintiff, | :  CRIMINAL NO: 2:21-cr-00065-JLS |
| v. | : |
| | : |
| JOHN DOUGHERTY, | : |
| | : |
| Defendant. | : |
| | : |

------------------------------------------------------------

**DEFENDANT JOHN DOUGHERTY'S MEMORANDUM OF LAW IN SUPPORT OF**
**HIS OMNIBUS MOTION FOR PRE-TRIAL RELIEF**

This case, currently scheduled for trial on May 5, 2022, is another in a series of federal charges brought against John Dougherty where no federal crime has occurred.  In this latest case, brought while Mr. Dougherty awaited trial on a separate 116-count indictment (the "Original Indictment"),[1] the Government strains to recast a case of an isolated assault alleged against Mr. Dougherty's nephew, Greg Fiocca, into a nineteen-count case of extortion against Mr. Dougherty himself where Mr. Dougherty had no connection to or involvement in the underlying assault beyond his familial relation to Mr. Fiocca.

This Indictment should be dismissed against Mr. Dougherty, pursuant to Rule 12(b)(3) of the Federal Rules of Criminal Procedure for failing to allege that Mr. Dougherty engaged in extortion or participated in a conspiracy to engage in extortion.  The only facts alleged against Mr. Dougherty in the Indictment concern his efforts as the Business Manager for the International Brotherhood of Electrical Workers Local Union 98 ("Local 98") to pursue a

---

[1]  At the time the Indictment in this case was unsealed, the Government knew that Mr. Dougherty was represented by undersigned counsel.  Yet, on March 3, 2021, the Government executed an early morning arrest of Mr. Dougherty at his home and in the presence of his sick wife.

legitimate labor objective: appropriate wages for a union member.  There are no facts alleging that Mr. Dougherty and Mr. Fiocca coordinated in any respect, let alone conspired to commit extortion.  Thus, even crediting the allegations concerning Mr. Fiocca's conduct, there is no link between those actions and Mr. Dougherty.  And, again crediting the Government's allegations concerning Mr. Fiocca, while they may be violative of state law, they cannot form the basis for a Hobbs Act extortion charge because, as long-standing Supreme Court precedent is clear: the Hobbs Act does "not apply to the use of force to achieve legitimate labor ends."  *United States v. Enmons*, 410 U.S. 396, 401 (1973).

Alternatively, Mr. Dougherty moves to exclude the August 19, 2020 warrantless recording of Gregory Fiocca (the "Third-Party Recording") from introduction into evidence at trial, as the recording is improper hearsay that cannot be used against Mr. Dougherty.  Moreover, even if the Government could establish that it is not hearsay, its admission is unfairly prejudicial and as such, Rule 403 of the Federal Rules of Evidence should bar its admission at trial.

Lastly, Mr. Dougherty respectfully requests that the Court order the Government to disclose the identity of the Confidential Informant who surreptitiously recorded an August 24, 2020 meeting that Mr. Dougherty held with Local 98 business agents – a meeting held over a year and a half after Mr. Dougherty was initially indicted.  Mr. Dougherty further requests that the Court order the Government to disclose the scope of the Confidential Informant's work for the Government with regard to any investigation of Mr. Dougherty, including all 302s, memoranda of interviews, and any other documents that demonstrate: (i) how the Confidential Informant was engaged and for what purposes; (ii) when the Confidential Informant was engaged; and (iii) when and what the Confidential Informant did at the Government's request.

# I.    BACKGROUND

## A.    Factual Background Alleged in the Indictment

At the time of the alleged events in the Indictment, John Dougherty served as the Business Manager of Local 98.  (Indictment ¶ 2.)  As the Business Manager, Mr. Dougherty was Local 98's "principal officer," charged with "organizing in his jurisdiction and for establishing friendly relations with employers."  Article XVII, Section 8 of the IBEW Constitution.  Around October 2019, Mr. Dougherty's nephew and co-defendant, Gregory Fiocca was appointed as a Local 98 job steward for the job site referenced in the Indictment.  (*Id.* at 3 ¶ 1.)  As such, Mr. Fiocca was a duly appointed union official responsible for representing the union and its members on the job site.

On March 3, 2021, a 19-count federal indictment was unsealed, naming Mr. Dougherty and Mr. Fiocca as defendants.  Both Mr. Dougherty and Mr. Fiocca were charged with one count of conspiracy to commit extortion pursuant to 18 U.S.C. § 1951(a) and eighteen substantive counts of extortion pursuant to 18 U.S.C. §§ 1951(a), (b)(2).  Specifically, the Indictment charges that "[f]rom on or about August 19, 2020 through on or about January 20, 2021" Mr. Dougherty and Mr. Fiocca entered into a conspiracy to commit extortion, in violation of 18 U.S.C. § 1951(a).  (Indictment at 2 ¶ 6.)

The lynchpin of the Indictment is a warrantless and surreptitious recording of Mr. Fiocca made by a private citizen – R.G., the manager of the project on which Mr. Fiocca was assigned. On August 19, 2020[2] – the date on which the Government alleges the conspiracy commenced – R.G. (ostensibly on his own and without any Government involvement) activated a recording

---

[2]    Just one month after the Government resumed investigating Mr. Dougherty and began using a Confidential Informant, as discussed below.

instrument in his office and then summoned Mr. Fiocca.  Once Mr. Fiocca arrived, R.G. confronted him about his work performance and R.G.'s refusal to pay Mr. Fiocca his full expected salary for that week.  After learning R.G. was withholding part of his salary, Mr. Fiocca makes several threatening statements after learning that his paycheck was significantly lower than anticipated.  Throughout the recording, Mr. Fiocca repeatedly contends his paycheck did not fairly reflect his work performed.  Importantly, Mr. Dougherty is neither a party to this conversation, nor is he mentioned by Mr. Fiocca outside of one passive reference.  (Indeed, the only time that Mr. Dougherty is mentioned by name is by R.G.)

The Indictment should be dismissed as it fails to allege that Mr. Dougherty engaged in criminal activity.  Rather, Mr. Dougherty's alleged actions are all related to the pursuit of legitimate labor ends, to wit, assuring that individuals on the job site at issue received the compensation to which they were entitled.  As such, the Court should dismiss the Indictment, as such actions are not within the reach of the Hobbs Act.

Nonetheless, should the case proceed to trial, the Government has indicated that during its case-in-chief, it intends to introduce this recording as evidence against both Mr. Dougherty and Mr. Fiocca.  This recording, however, is improper hearsay, and is therefore, inadmissible against Mr. Dougherty.  Moreover, the admission of this evidence, which is tainted by untrustworthy circumstances, would be unfairly prejudicial against Mr. Dougherty, inviting the jury to convict on impermissible grounds.  Therefore, Mr. Dougherty moves to preclude the Government from offering the recording at trial.

### B.    The Government's Recent Disclosures in Discovery

On March 9, 2022, the Government produced in discovery a recording of an hour-long meeting that Mr. Dougherty held telephonically with Local 98 business agents on August 24, 2020.  This recording, like the Third-Party Recording, was made without Mr. Dougherty's

knowledge or consent.  The Government later disclosed on March 29, 2022 (six months after

trial of the honest services charges in the Original Indictment concluded) that the recording was

made by a Confidential Informant, whose identity the Government does not intend to disclose.

On April 4, 2022, after undersigned counsel sent the Government a letter requesting further

information regarding the nature of the Confidential Informant's work for the Government, the

Government responded that the Confidential Informant began supplying information to the

Government in July 2020 – ***over a year and a half after Mr. Dougherty was indicted in the

Original Indictment and merely three months before his trial was set to begin***.[3]  Given the

great concerns about the manner in which this Confidential Informant was utilized by the

Government, Mr. Dougherty moves the Court to mandate that the Government promptly disclose

the Confidential Informant's identity as well as all information detailing what he was asked to

do, what he did, and when he did it.

## II.    STANDARD OF REVIEW

Pursuant to Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure, a court may

entertain a motion to dismiss for failure to state an offense at any time while a case is pending.

Doing so allows "a district court to review the sufficiency of the government's pleadings to . . .

ensur[e] that legally deficient charges do not go to a jury." *United States v. Stock*, No. 11-182,

2012 WL 202761, at *4 (W.D. Pa. Jan. 23, 2012) (citing *United States v. Bergrin*, 650 F.3d 257,

268 (3d Cir. 2011)).  While for purposes of a motion to dismiss the alleged facts are assumed to

be true, mere recitation of the elements of an offense is insufficient.  *United States v. Totoro*, No.

---

[3]    As the Court is aware, due to the pandemic, Mr. Dougherty's trial on the honest services
fraud charges contained in Original Indictment was scheduled to begin on numerous
occasions.  Relevant to this motion, however, is the fact that on July 9, 2020, the Court
entered an order setting trial to begin on October 26, 2020.

15-291, 2017 U.S. Dist. LEXIS 117371, at *5 (E.D. Pa. July 27, 2017).  Instead, the Indictment

must allege specific facts that fall within the scope of the relevant criminal statute.  *United States*

*v. Vitillo*, 490 F.3d 314, 321 (3d Cir. 2007).

**III.   ARGUMENT**

**A.     The Indictment Fails to Allege that Mr. Dougherty Engaged in Criminal Activity**

The Supreme Court has been clear: "[t]he legislative framework of the Hobbs Act dispels

any ambiguity in the wording of the statute and ***makes it clear that the Act does not apply to the***

***use of force to achieve legitimate labor ends***."  *United States v. Enmons*, 410 U.S. 396, 401

(1973) (emphasis added); *see also Care One Mgmt., LLC v. United Healthcare Workers E.*, No.

19-3693, 2021 U.S. App. LEXIS 38268, at *19 (3d Cir. Dec. 17, 2021) ("Since 1973, when the

Supreme Court decided *Enmons*, it has been clear that '***the [Hobbs] Act does not apply to the***

***use of force to achieve legitimate labor ends.***'"(emphasis added)).  Recently, the Third Circuit

applied this principal in *Care One Management*, noting that in *Enmons* "[t]he Court found that

the Hobbs Act simply had no application to labor-management strife when a union is seeking

legitimate ends, even if the means chosen are destructive."  *Id.* at *12.  The court explained the

rationale for the rule, noting that:

> Labor is simply different.  The underlying purpose of a strike – the
> ultimate tool of labor – is, after all, inflicting harm on an
> employer's business to exert such economic loss (or threat of loss)
> upon that business that the employer agrees to labor's demands.
> Accordingly, as long as unions pursue legitimate labor objectives,
> their coercive tactics are simply not subject to liability under the
> Hobbs Act.

*Id.* at *20.  However, the Third Circuit was clear that this rule – which is also referred to as the

"claim-of-right defense" – applies not only to conduct during strikes, but also to "'***any***'

***legitimate labor activity***."  *Id.* at *13 (emphasis added).

Here, the Government seeks to criminalize legitimate labor activity in violation of the clear language of both *Enmons* and *Care One Management*. The entire foundation of the Indictment is not an extortionate scheme between Mr. Dougherty and Mr. Fiocca, but rather a pay dispute between Mr. Fiocca and his employer. Mr. Dougherty's crime? He took his union member's side in that dispute. (Indictment at 3 ¶ 3) ("Dougherty refused to consider any facts that showed defendant Fiocca was at fault and falsely blamed the people who were supervising defendant Fiocca.").[4] The Indictment alleges that after Mr. Fiocca raised his concerns with R.G. regarding his wages, Mr. Dougherty:

> made the following threats of economic harm against R. P.: a) defendant DOUGHERTY would no longer allow the Local 98 electricians working for the contractor to work overtime; b) defendant DOUGHERTY would force the contractor to operate three shifts of Local 98 electricians on the job; c) defendant DOUGHERTY would pull all of the Local 98 electricians off of the job; and d) defendant DOUGHERTY might try to prevent the contractor from getting a large electrical job in Philadelphia.

(Indictment at 4 ¶ 7.) Yet, these are exactly the types of coercive action that fall outside of the ambit of the Hobbs Act pursuant to *Enmons* and *Capital One Management*. Under binding precedent, to the extent that Mr. Dougherty took any of these actions, they were permissible in order to "inflict[] harm on an employer's business to exert such economic loss (or threat of loss) upon that business that the employer agrees to labor's demands." *Care One Mgmt., LLC*, 2021 U.S. App. LEXIS 38268, at *20. Here, and according to the Indictment, these actions were taken to ensure that a union member working on a job site received the compensation to which he was entitled. *Id*. As such, because the Indictment only alleges that Mr. Dougherty engaged in actions

---

[4]    As noted above, the Government, unable to allege an extortion scheme, is instead litigating Mr. Fiocca's actual work performance. This is not the legal standard. This is another bait and switch. Mr. Fiocca's work performance does not matter; Mr. Dougherty's intent does.

protected by the claim of right defense, and therefore, did not violate the Hobbs Act, the

Indictment should be dismissed.

> **B.      In the Alternative, the Government Should Be Precluded from Offering the
> Third-Party Recording As Evidence at Trial As It Is Improper Hearsay**

In a joint trial, it is well-established that "the out-of-court statements of a non-testifying

defendant, even if admissible against the declarant, may not be used against a jointly tried

codefendant unless otherwise independently admissible against that codefendant." *United States*

*v. Bhimani*, 492 F. Supp. 3d 376, 385 (M.D. Pa. 2020) (internal citations omitted).  The rule

against hearsay precludes a declarant's out-of-court statement offered in evidence to prove the

truth of the matter asserted.  FED. R. EVID. 801(c).  Rule 801(d)(2)(E) is an exception to this

prohibition, providing that certain statements made by co-conspirators are not hearsay.

However, pursuant to this rule, co-conspirator statements are admissible only if the Government

proves by a preponderance of the evidence that: (1) a conspiracy existed and the declarant and

the defendant were both members; (2) the statements were made in the course of the conspiracy;

and (3) the statements were made in furtherance of the conspiracy.  *See, e.g.*, *United States v.*

*Johnson*, 628 F. App'x 124, 131 (3d Cir. 2015); *United States v. Jones*, 372 F. App'x 343, 344

(3d Cir. 2010); *United States v. McGlory*, 968 F.2d 309, 333 (3d Cir. 1992).

The timing element of 801(d)(2)(E) is crucial, as the law is clear: statements made prior

to the formation of a conspiracy are not admissible under the co-conspirator exception.  *See* FED.

R. EVID. 801(d)(2)(E); *see also Johnson*, 628 F. App'x at 131 (finding that because there was no

evidence of a conspiracy between the two defendants at the time the statement was made, the

statement was not admissible against the non-declarant); *United States v. Garcia*, 13 F.3d 1464,

1473 (11th Cir. 1994) (explaining that the government must establish an ongoing conspiracy at

the time of the statements); *United States v. Coe*, 718 F.2d 830, 840 (7th Cir. 1983) ("The

requirement that the statement be made 'during the course of' the conspiracy seems itself to contemplate that the conspiracy be in existence at the time the statement is made.").  And, the existence of a conspiracy *must be supported by independent evidence exclusive of the at-issue statements.*[5]  *United States v. Cheatham*, No. 3:2006-29, 2008 U.S. Dist. LEXIS 7697, at *5 (W.D. Pa. Feb. 1, 2008) (Rule 801(d)(2)(3) "makes it clear that the statement of a coconspirator is not sufficient to establish the conspiracy's existence, the declarant's membership within the conspiracy as well as a defendant's membership as a co-conspirator.").

Here, the Government simply cannot meet its burden of establishing that the statements are admissible pursuant to Rule 801(d)(2)(E).  The Indictment alleges that Mr. Dougherty and Mr. Fiocca were parties to a conspiracy to commit extortion, pursuant to 18 U.S.C. § 1951(a). To render Mr. Fiocca's statements admissible at trial against Mr. Dougherty, the Government must thus prove that *before* Mr. Fiocca made his statements on August 19, 2020, he and Mr. Dougherty were parties to an agreement to use economic duress or threat of force to obtain a benefit from the party who is the target of the extortion.  While the Indictment charges that the conspiracy began "on or about August 19, 2020," it is completely devoid of any allegations that demonstrate this fundamental requirement of Rule 801(d)(2)(E).  That is, there is not a single fact alleged in the Indictment indicating or suggesting that Mr. Fiocca and Mr. Dougherty formed an extortionate agreement prior to August 19, 2020.  Indeed, the entirety of Mr.

---

[5]    Though a trial court has discretion to conditionally admit the statements before the Government establishes all of the elements under Rule 801(d)(2)(E), "the Third Circuit has cautioned that admission of statements subject to later introduction of the prerequisites under the rule should be used sparingly."  *Cheatham*, 2008 U.S. Dist. LEXIS 7696, at *7 (internal quotation marks omitted).  Where practical, a court may conduct a pretrial hearing on the admissibility of the alleged co-conspirator statements, thus, safeguarding the defendant from the prejudice inherent in the practice of admitting coconspirator declarations subject to later proof of the requisite conspiracy.  *United States v. Giardina*, No. 04-29J, 2005 U.S. Dist. LEXIS 28374, at *8 (W.D. Pa. Nov. 17, 2005).

Dougherty's alleged involvement in the August 19, 2020 altercation consists of actions allegedly taken by Mr. Dougherty in the aftermath of the August 19, 2020 altercation. (*See* Indictment at 4-5 ¶¶ 7, 8.) And, without any evidence that Mr. Dougherty and Mr. Fiocca were parties to a conspiracy *before* the recording was made,[6] the Government cannot prove that any of Mr. Fiocca's statements were made in furtherance of the conspiracy's objectives, as opposed to being made purely in support of his own personal objectives. *See United States v. Weaver*, 507 F.3d 178, 183 (3d Cir. 2007) ("[S]tatements made to those who are not involved in the conspiracy are not in furtherance of it just as casual conversation between co-conspirators that is not intended to induce continued involvement, or other actions that would not advance the conspiracy, are not in furtherance of a conspiracy."). Because the Government cannot establish that Rule 801(d)(2)(E) applies, the recording is inadmissible hearsay as to Mr. Dougherty and therefore, should be precluded from trial.[7]

Moreover, Rule 403, which permits the Court to exclude otherwise admissible evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice" also bars the admission of this recording at trial. FED. R. EVID. 403; *see also United States v. Cross*, 308 F.3d 308, 323 (3d Cir. 2002) (evidence is inadmissible where "its unfairly prejudicial effect

---

[6]   While this Motion exclusively focuses on the timing of the recording in relation to the Government's ability to prove a conspiracy, Mr. Dougherty in no way concedes that the Government would be able to show, by any standard of proof, that Mr. Dougherty and Mr. Fiocca were engaged in a conspiracy at any point during the relevant time period.

[7]   Mr. Dougherty acknowledges that Mr. Fiocca's statements are likely admissible against Mr. Fiocca at trial as admissions pursuant to Rule 801(d)(2)(A). However, because the Government cannot meet its burden of establishing they are not hearsay with regard to Mr. Dougherty, any admission of the recording at trial – even with a jury instruction – would be unfairly prejudicial to Mr. Dougherty and would impair his ability to obtain a fair trial. As such, Mr. Dougherty has serious concerns regarding whether a joint trial in which the recording is played (or its transcript is introduced) would allow him to adequately defend against the charges contained in the Indictment.

'substantially outweighs' its probative value."). When evaluating whether evidence should be properly excluded under Rule 403, the Court must "balance (i) the strength of the evidence; (ii) the need for the evidence in light of the contested trial issues and the other evidence available to the government; and (iii) the danger that the evidence will inflame the jurors and cause them to convict on impermissible grounds." *United States v. Bey*, No. 16-290, 2017 U.S. Dist. LEXIS 65644, at *15 (E.D. Pa. Apr. 28, 2017). Further, the Court has "broad discretion" when evaluating these factors. *Id.*

Here, given that the Government cannot prove that Mr. Fiocca and Mr. Dougherty were parties to a conspiracy prior to the time Mr. Fiocca was recorded, admitting this hearsay evidence at trial, even if solely admitted against Mr. Fiocca, would be unfairly prejudicial as to Mr. Dougherty. The recording is replete with threats of violence and explicit language. A court may exclude such statements pursuant to Rule 403. *See e.g.*, *United States v. Logan*, 49 F.3d 352, 358 (8th Cir. 1995) (finding court properly excluded threatening remarks "replete with graphic and derogatory language"); *United States v. Gamory*, 635 F.3d 480, 493 (11th Cir. 2011) (finding introduction of statements regarding violence, profanity, sex, promiscuity, and misogyny reversible error, as the "probative value . . . was minimal at best, and more importantly was substantially outweighed by [the statements'] unfair prejudice."). Because the Government cannot establish a then-existing conspiracy, Mr. Fiocca's statements have no probative value as to whether Mr. Dougherty conspired and/or committed acts of extortion. Therefore, allowing the jury to listen to the entire recording in a joint trial would serve only to inflame the jurors, inviting them to convict Mr. Dougherty for his nephew's language and behavior, not for committing the

alleged crimes.[8]  Thus, Mr. Dougherty requests that the Court preclude the Government from offering the recording at trial in any manner.

> **C.     The Government Should Be Ordered to Disclose the Identity of the Confidential Informant Whom Surreptitiously Recorded an August 24, 2020 Meeting Mr. Dougherty Held with His Business Agents**

The Government's privilege to withhold the identity of a confidential informant is not absolute.  *Roviaro v. United States*, 353 U.S. 53 (1957); *see also United States v. Pascual-Pichardo*, No. 2011-001, 2014 U.S. Dist. LEXIS 6648, at *9 (D.V.I. Jan. 18, 2014).  Rather, a court may order that the Government disclose the identity of a confidential informant to preserve a defendant's right to due process, where disclosure of the confidential informant's identity is "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause."  *Roviaro*, 353 U.S. at 60-61; *see also United States v. Jiles*, 658 F.2d 194, 198-99 (3d Cir. 1981).  Once the defendant demonstrates the need for disclosure, the court must balance the defendant's interests in disclosure against the Government's interest in maintaining the confidentiality of its informant.  *United States v. Freeman*, Nos. 06-205-03, 06-207-01, 2008 U.S. Dist. LEXIS 25820, at *5 (E.D. Pa. Mar. 27, 2008).  In the Third Circuit, the following circumstances may necessitate disclosure: (1) the informant's possible testimony is highly relevant; (2) it may disclose an entrapment; (3) it may throw doubt upon the defendant's identity; or (4) the informer is the sole participant other than the accused.  *Jiles*, 658 F.2d at 198-99; *see also Pascual-Pichardo*, No. 2011-001, 2014 U.S. Dist. LEXIS 6648, at *14 (finding defendant's

---

[8]    To the extent the Court believes that the recording is probative to the charged offenses, such evidence is admissible through several other methods, suggesting the recording is not only unfairly prejudicial but also cumulative.  For example, if R.G. testifies at trial, the recording would be cumulative and unnecessary.  *See Logan*, 49 F.3d at 358 (explaining that taped recording that included statements of threats were merely cumulative of live testimony); *Reinert v. Larkins*, 211 F. Supp. 2d 589, 603 (E.D. Pa. 2002) (finding that excluded 911 tape would have been cumulative of live testimony).

argument that the confidential informant was directing defendant at relevant times in the case "met the threshold of establishing a need for disclosure").

The Government's ability to utilize a Confidential Informant post-indictment is subject to further constraints to ensure that an individual's Sixth Amendment right to counsel is not infringed upon.  And, when the Government obtains confidential defense strategy through the use of an agent or confidential informant, prejudice to the defendant is presumed. *See, e.g., United States v. Levy*, 577 F.2d 200, 208 (3d Cir. 1978) (dismissal of indictment on Sixth Amendment grounds warranted where government employed confidential informant to obtain and reveal confidential defense strategy); *see also United States v. Cooper*, 397 F. Supp. 277, 285 (D. Neb. 1975) ("If a government informant (1) gains information (2) relating to a charge then pending or being investigated (3) from overhearing conversations by counsel expected to be confidential, and (4) the information is divulged before or during trial on that charge to the counsel handling the prosecution of that charge, then there has been a violation of the defendant's Sixth Amendment right to counsel and a new trial is necessary if conviction has followed the divulging.").

Strong sanctions are warranted when the Government knowingly intrudes upon the attorney-client relationship, as the Third Circuit has recognized "the importance of protecting a criminal defendant's attorney-client relationship from a deliberate attempt to destroy it and to subvert the defendant's right to effective assistance of counsel and a fair trial."  *United States v. Costanzo*, 625 F.2d 465, 469 (3d Cir. 1980).  And, the same concerns are present when confidential defense strategy is disclosed by a Confidential Informant to a government agent. *See Levy*, 577 F.2d at 208 (expressing concern that "agents of law enforcement agencies . . . who actually work up the cases and assist government counsel at trial, might not even disclose to

the government attorneys that certain information was obtained from the defense by an informer.").

Here, the Government must disclose the identity of the Confidential Informant to ensure that the Confidential Informant was not privy to Mr. Dougherty's defense strategy with regard to charges contained in the Original Indictment.  Mr. Dougherty's concerns are more than speculative, given that the Government engaged the Confidential Informant *before the alleged conspiracy in this action began and over 18 months after he was indicted in the Original Indictment.*  In the months leading up to the scheduled October 2020 trial, which ultimately occurred in October 2021, Mr. Dougherty was heavily engaged in trial preparations, working with undersigned counsel to prepare his defense in advance of trial.[9]  As part of these efforts, Mr. Dougherty was routinely communicating with members of the union, particularly business agents, to prepare his defense with regard to the allegations that were made in the Original Indictment.  Indeed many, if not all, of these business agents were represented by counsel, some of whom were privy to Mr. Dougherty's defense strategy.  Moreover, given that Mr. Dougherty had already been indicted and the Government does not allege that he was engaged in this conspiracy until August 19, 2020, it is unclear *why* a Confidential Informant would otherwise be necessary at such a belated point in the Government's investigation.  The timing and only recent disclosure of the Confidential Informant's existence render the Government's decision to utilize such an investigatory tool even more concerning.

---

[9]     The Government has not indicated when, if ever, the Confidential Informant ceased providing information to the Government, or whether any of the information provided by the Confidential Informant was utilized at trial on the Original Indictment.  Given that the Confidential Informant began supplying information in July 2020, nearly a year and a half before Mr. Dougherty ultimately stood trial, this only compounds Mr. Dougherty's concerns about the manner in which the Confidential Informant was utilized.

As such, it is imperative that the Government disclose the identity of the Confidential Informant so that Mr. Dougherty can be assured that his rights, specifically his Sixth Amendment right to counsel, were not violated.  Additionally, the Government must be ordered to disclose all 302s, memoranda of interviews, and any other documents that demonstrate: (i) how the Confidential Informant was engaged and for what purposes; (ii) when the Confidential Informant was engaged; and (iii) when and what the Confidential Informant did at the Government's request.

## IV.    CONCLUSION

For the foregoing reasons, Mr. Dougherty respectfully requests that the Court dismiss the Indictment as it only alleges that Mr. Dougherty engaged in protected actions to obtain legitimate labor ends.  This is insufficient to establish Hobbs Act liability.  In the alternative, Mr. Dougherty respectfully requests that the Court preclude the Government from offering the August 19, 2020 recording as evidence, as it is improper hearsay.  Even if the Government could establish that the requirements of Rule 801(d)(2)(E) are met, Rule 403 bars its admission, as its probative value is outweighed by the risk of unfair prejudice.  Additionally, Mr. Dougherty respectfully requests that the Court require that the Government promptly disclose the identity of the Confidential Informant, and produce all 302s, memoranda of interview, and documents that

identify when and how the Confidential Informant was utilized in the Government's

investigation.

Dated:  April 8, 2022                         Respectfully submitted,


                                              */s/ Henry E. Hockeimer, Jr.*                    .
                                              Henry E. Hockeimer, Jr. (I.D. No. 86768)
                                              Emilia L. McKee Vassallo (I.D. No. 318428)
                                              BALLARD SPAHR LLP
                                              1735 Market Street, 51st Floor
                                              Philadelphia, PA  19103-7599
                                              T: 215.665.8500
                                              F: 215.864.8999

                                              *Attorneys for Defendant John Dougherty*