**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| **v.** | **:** | **CRIMINAL NO.  21-65** |
| **JOHN DOUGHERTY** | **:** | |
| **GREGORY FIOCCA** | | |

**O R D E R**

AND NOW, this        day of         , 2022, upon consideration of the Motions of

Defendants John Dougherty and Gregory Fiocca to Dismiss the Indictment, and for other relief,

the Government's Response, and having held a hearing on the motions, it is hereby **ORDERED**

that the motions are **DENIED**.

**BY THE COURT:**

_____

**HONORABLE JEFFREY L. SCHMEHL**
**United States District Court Judge**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| **v.** | **:** | **CRIMINAL NO.  21-65** |
| **JOHN DOUGHERTY** | **:** | |
| **GREGORY FIOCCA** | | |

**GOVERNMENT'S RESPONSE TO THE DEFENDANTS' MOTIONS TO DISMISS THE
INDICTMENT AND FOR OTHER RELIEF**

The United States of America, by and through its attorneys, Jennifer A. Williams,

United States Attorney, and the undersigned attorneys, hereby responds to the defendants'

Motions to Dismiss the Indictment and for other miscellaneous relief.

Because the Indictment properly charges Hobbs Act extortion, the government has

demonstrated by a preponderance of the evidence that Gregory Fiocca's statements of August

19, 2020 were made during and in furtherance of the charged conspiracy, the probative value

of the recording of the assault is not outweighed by the risk of undue prejudice, and there is no

legal or factual reason to justify revealing the identity of the confidential informant who

recorded the August 24, 2020 telephone confercnce, the motions should be denied.

**I.    Introduction**

Defendants John Dougherty and Gregory Fiocca are charged with conspiracy to commit

extortion, in violation of 18 U.S.C. § 1951(a) and eighteen counts of attempted extortion and

extortion, in violation of 18 U.S.C. § 1951(a) and (b)(2).

More specifically, Dougherty and Fiocca are charged with conspiring to obtain,

attempting to obtain, and obtaining wages and benefits for Fiocca for services not performed,

by the wrongful use of actual and threatened force, violence, and fear, including fear of

economic harm, from on or about August 19, 2020, through January 20, 2021.

Dougherty was the Business Manager of Local 98 at the time of the charged offenses. As such, he controlled the operations of Local 98, and all the union's employees, business representatives, and job stewards. *Indictment No. 21-65*, Count One, Paragraph 2. Defendant Gregory Fiocca is an electrician, a member of Local 98, and the nephew of defendant John Dougherty. *Id.*, Paragraph 3.

In October 2019, Dougherty appointed Fiocca to be the Local 98 steward for the employees of the contractor who was the victim of the charged offenses. *Id.*, Overt Act One. In addition to performing the job of an electrician, a steward has certain rights and responsibilities, which are set forth in the Local 98 Collective Bargaining Agreement (CBA). They include the right of the steward to be the next to last person laid off when a job is nearing completion, and the responsibility of ensuring that overtime is equally and impartially allotted, and that the International Brotherhood of Electrical Workers (IBEW) constitution, Local 98 by-laws, and the Local 98 CBA are followed. *Id.*, Paragraph Four.

The Indictment further alleges that once at the job, Fiocca "frequently did not show up for work, was not present at his workstation, and did not do the work that was assigned to him," and, as a result, "was sometimes paid for fewer than 40 hours of work for the week." *Id.*, Overt Act Two. It further alleges that when Dougherty was told about Fiocca's poor attendance and work performance, Dougherty "refused to consider any facts that showed defendant Fiocca was at fault and falsely blamed the people who were supervising defendant Fiocca." *Id.*, Overt Acts Two and Three.

In July 2020, after Fiocca was paid for fewer than 40 hours for one week because he had not worked 40 hours, he confronted the project manager on the job (who was also a

- 2 -

member of Local 98) and accused the project manager and his employer of not paying him for all of the hours he worked.  *Id.*, Overt Act Four.  On August 19, 2020, when Fiocca received a paycheck that was for less than 40 hours because he had not worked 40 hours for the previous week, Fiocca assaulted the project manager, grabbing him by the throat, throwing him on a desk, and threatening to beat him and the owner of the company if they continued to monitor his performance and hold him accountable.  Fiocca told the project manager that there was nothing they could do to him, and threatened that he and Dougherty would shut down the job by pulling all of the Local 98 electricians off the job site if they continued to monitor him.  *Id.*, Overt Acts Five, Six and Eight.

Overt Acts Six through Nine of Count One allege as follows:

6.     During the assault, defendant GREGORY FIOCCA made the following threats to [the project manager]:

" . . . You owe me, 36 f--king hours; before I break your f--king jaw. . . Call an Agent.  Call the [Union] Hall.  There's nothing you can do to me.  I'm getting my money . . . You think this is f--king, how this works?  You think you're like, you think yous are untouchable?  I'll break all of you, I'll f--king break your face and [the contractor's] face.  How's that sound? . . .
Stop f--king checking on me every day.  Stop looking for me every f--king five minutes.  And I won't break your f--king face . . . Listen, next time this happens again, it's not going to be no little f--king push.  You, I'm going to punch you in your f--king face . . . check on me again, I'll break your face in the parking garage . . . We're pulling the whole job, you know that, right now.  I'm calling my uncle already.  We're pulling everyone off the job.  F--k you now.  Tell [the contractor] to come check on me tomorrow too.  Soon as he's in the parking garage, and no cameras in there, I'll break his f--king face too."

7.     On or about August 19, 2020, after the assault, defendant JOHN DOUGHERTY made the following threats of economic harm against the electrical contractor:

a) defendant DOUGHERTY would no longer allow the Local

98 electricians working for the contractor to work overtime;

b) defendant DOUGHERTY would force the contractor to operate three shifts of Local 98 electricians on the job;

c) defendant DOUGHERTY would pull all of the Local 98 electricians off of the job; and

d) defendant DOUGHERTY might try to prevent the contractor from getting a large electrical job in Philadelphia.

8.     On or about August 19, 2020, after defendant GREGORY FIOCCA assaulted [the project manager], three representatives of Local 98, all of whom had been appointed by defendant JOHN DOUGHERTY, went to the job site and spoke to [the project manager], who told them that defendant FIOCCA grabbed him by the throat, threw him on a desk, and threatened him with further violence.  One of the Local 98 representatives walked away and spoke with defendant DOUGHERTY on the telephone. After the call, the Local 98 representative stated to [the project manager] and other agents and employees of the contractor that nothing concerning defendant FIOCCA's employment was going to change.

9.     From on or about August 19, 2020 through on or about January 17, 2021, defendant GREGORY FIOCCA remained employed by the contractor, did little or no work, and received salary, wages, and credit for employee benefit contributions paid by the contractor, for services not performed, with the consent of the contractor's owner, agents, and employees, which was induced by the wrongful use of actual and threatened force, violence, and fear, including fear of economic harm.

As set forth in the next section, the Indictment properly charges Hobbs Act extortion because the defendants are charged with using "force and violence, and threats of violence and economic harm, to have the contractor continue to employ and pay defendant FIOCCA for services not performed," which is not a legitimate objective of organized labor.

## II.     The Indictment Should not be Dismissed.

The defendants argue that the Indictment must be dismissed because the Hobbs Act "does not apply to the use of force to achieve legitimate labor ends," *citing United States v. Enmons*, 410 U.S. 396, 401 (1973).  The Indictment, however, does not charge that the

- 4 -

defendants were pursuing "legitimate labor ends."  The defendants are charged with using "force and violence, and threats of violence and economic harm, to have the contractor continue to employ and pay defendant FIOCCA for services not performed . . ."  Indictment No. 21-65, Count One, Paragraph 7.  This is not a legitimate labor objective.

As set forth by the Court in *Enmons*, demands for wages for "imposed, unwanted, superfluous and fictitious services" are not legitimate union objectives. 410 U.S. at 400, n. 5 (*citing United States v. Green*, 350 U.S. 415, 417 (1956) and *United States v. Kemble*, 198 F.2d 889 (3d Cir. 1952)).

Numerous courts have held that extortionate demands for payment for work not performed is not a valid union objective and is not protected under *Enmons.  See, eg. United States v. Dougherty*, 2014 WL 3670129, at *2 (E.D. Pa. July 23, 2014) (denial of motion to dismiss indictment).  Therefore, the defendants' argument must be rejected.

## III.   The Statements Made by Fiocca During the Assault were Made During and in Furtherance of the Charged Conspiracy.

Contrary to the defendants' contention, the government can establish, by a preponderance of the evidence, that the threats that defendant Gregory Fiocca made during the assault are admissible against Dougherty as the statements of a coconspirator, pursuant to Rule 801(d)(2)(E) of the Federal Rules of Evidence.

For Fiocca's statements to be admissible, the Court must find by a preponderance of the evidence that: 1) a conspiracy existed; 2) the declarant and the party against whom the statement is offered were members of the conspiracy; 3) the statement was made during a conspiracy; and 4) the statement was made in furtherance of the conspiracy. *Fed. R. Evid.* 801(d)(2)(E); *United Sates v. Weaver*, 507 F.3d 178, 181 (3d Cir. 2007); *United States v. Ellis*, 159 F.3d 493, 496 (3d Cir. 1998).

- 5 -

In making this determination, the Court can consider the offered statement itself. *Bourjaily*, 483 U.S. at 180 81. "[T]here is little doubt that a co-conspirator's statements could themselves be probative of the existence of a conspiracy and the participation of both the defendant and the declarant in the conspiracy." *Id.; see also United States v. McGlory,* 968 F.2d 309, 334 (3d Cir. 1992).[1]  The district court should consider the totality of the circumstances when deciding the admissibility of such evidence. "The circumstances surrounding the statement, such as the identity of the speaker, the context in which the statement is made, or evidence corroborating the contents of the statement," should be considered by the Court. *See Fed. R. Evid. 801(d)(2)* (Advisory Committee Notes); *United States v. Traitz*, 871 F.2d 368, 399 (3d Cir. 1989). When determining the admissibility of a co-conspirator statement, the existence of the conspiracy and the party's participation in that conspiracy need only be proved by a preponderance of the evidence. *Bourjaily*, 483 U.S. at 175.

The evidence establishing that Fiocca's statements were made during the existence of and in furtherance of the charged conspiracy can be described as follows:

1)      The nature of the defendants' relationship prior to Fiocca's assignment to the Live!Casino jobsite in October 2019;

2)       Dougherty's inappropriate assignment of Fiocca as a steward on the Live!Casino job;

3)      Dougherty's refusal to believe or act on the complaints concerning Fiocca's performance and attendance at the Live!Casino job;

4)      Fiocca's threats made during the assault; and

---

[1]      The defendants erroneously claim that the existence of a conspiracy "must be supported by independent evidence exclusive of the at-issue statements." ECF 56 at 9. This is not the standard in the Third Circuit. The statements themselves may be considered by the trial court, if they are corroborated by independent evidence. *United States v. Turner*, 718 F.3d 226, 232 (3d Cir. 2013).

5)      Dougherty's threats and actions after the assault, which were identical to what Fiocca said during the assault.

During 2015 and 2016, even though Dougherty was aware that: 1) Fiocca told off his foremen on three jobs that Dougherty had gotten for him; 2) Fiocca was caught sleeping on one of the jobs, and was caught leaving early on another; 3) Fiocca assaulted someone in a bar; 3) Fiocca spit on the safety director on a job site; and 4) Fiocca refused to accept any responsibility for his conduct, Dougherty repeatedly assigned him to desirable jobs, and reiterated to others his intent on continuing to assist Fiocca.

Dougherty did the same thing at the Live!Casino job in October 2019, putting Fiocca on the job as a shop steward, which made it harder to remove him from the job, despite the fact that no one with Fiocca's his lack of experience and terrible work history would ever be chosen to be a shop steward on merit.

After October 2019, but before the assault, Dougherty was told about Fiocca's poor attendance and work performance by one of the foremen on the job, and by the Local 98 business agent who was monitoring the job. Dougherty, however, "refused to consider any facts that showed defendant Fiocca was at fault and falsely blamed the people who were supervising defendant Fiocca." Count One, Overt Act Three.

On August 19, 2020, during the assault, Fiocca told the victim, ". . . **There's nothing you can do to me** . . . Listen, next time this happens again, it's not going to be no little f--king push.  You, I'm going to punch you in your f--king face . . .  check on me again, I'll break your face in the parking garage . . . **We're pulling the whole job, you know that, right now.  I'm calling my uncle already**." (Emphasis added).  Fiocca's statements reflect a prior mutual understanding between him and Dougherty - that there will be no consequences for his

- 7 -

conduct, and that Dougherty will continue to assist him however he can. Tellingly, Fiocca tells the victim that if he does not do what Fiocca wants, which, in essence, is pay him whether he works or not, "we" are going to have the job shutdown. The use of "we" clearly refers to Fiocca and Dougherty and demonstrates that this statement was made in furtherance of an existing conspiracy.

Likewise, Fiocca's threat to the victim that "There's nothing you can do to me" was not a coincidence. It reflected the mutual understanding between Dougherty and Fiocca that Dougherty would keep Fiocca employed, no matter what.

Fiocca's words at the time of the assault are, "probative of the existence of a conspiracy and the participation of both the defendant and the declarant in the conspiracy." *Bourjaily*, 483 U.S. at 181. The threats Fiocca made during the assault make it clear that he knew, based on their mutual understanding, that he would suffer no consequences.

After the assault, Dougherty made threats of economic harm against the contractor, one of which was that he would pull all the Local 98 electricians off the site - the same threat that Fiocca had made hours earlier.

The evidence described above demonstrates by a preponderance of the evidence that the statements made by Fiocca were made in furtherance of the existing plan of the defendants to have the contractor continue to employ and pay Fiocca for services not performed, and to have the contractor's owners, agents, and employees forego any attempt to hold Fiocca accountable and monitor his work performance, through force and violence, and threats of violence and economic harm. Therefore, they should be admitted against Dougherty as statements of a coconspirator.

## IV.     There is No Basis to Exclude the Recording of the Assault.

The probative value of the recording of the assault of August 19, 2020 is not substantially outweighed by the danger of unfair prejudice to the defendants.  Rule 403 of the Federal Rules of Evidence states as follows:

> [a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

The second week in August 2020, Fiocca was paid for 20 hours, because the project manager rarely observed him on the job site and working. Once the project supervisor realized why Fiocca was coming to see him on the morning of August 19, 2020, he recorded their encounter on his phone, which began with Fiocca attacking and threatening him. The probative value of this evidence is not substantially outweighed by the danger of unfair prejudice.  Rule 403 is an exception to the mandatory admission of relevant evidence; therefore, exclusion of evidence under Rule 403 should be "used sparingly."  *Blancha v. Raymark Industries*, 972 F.2d 507, 516 (3d Cir. 1992); *United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979).  Courts have universally recognized that "[v]irtually all evidence is prejudicial or it is not material." *See, e.g., Carter v. Hewitt*, 617 F.2d 961, 972, n.14 (3d Cir. 1980), *quoting Dollar v. Long Manufacturing Co.*, 561 F.2d 613, 618 (5th Cir. 1977).

Evidence is unfairly prejudicial if it suggests a "decision on an improper basis, commonly, though not necessarily, an emotional one."  *See* Advisory Committee Note to FRE 403.  Evidence is not "unfairly prejudicial" simply because it is "undesirable from the defendant's perspective." *Cross*, 308 F.3d at 324 n. 23.  Rather, the issue of "unfairness" is whether "the proponent would secure an advantage that results from the likelihood [that] the

evidence would persuade by illegitimate means." *United States v. Blyden*, 964 F.2d 1375, 1378 (3d Cir. 1992) (emphasis added).

To deny the government the use of the evidence described above would be to impermissibly shield defendant Gregory Fiocca from his own acts and words, and deny the jury evidence that is crucial to illustrate the nature of the assault and the manner in which Fiocca threatened the victim. The recording is clearly relevant to prove the existence of the charged conspiracy, which was manifested by the threats that Fiocca made during the assault. Rule 403 is not intended to have such an illogical and unjust impact. *United States v. Cross*, 308 F.3d 308, 325 (3d Cir. 2002) ("Rule 403 does not provide a shield for defendants who engage in outrageous acts . . . It does not generally require the government to sanitize its case . . ." (*quoting United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir. 1998))).  Additionally, exclusion of the recording would force the victim to have to recall the exact words and actions of Fiocca during an assault he would rather forget.

As set forth above, the subject of the recording is the assault that is one of the charged overt acts in the conspiracy, and a critical one at that. Its probative value is not outweighed in any way, much less substantially, by the danger of unfair prejudice. Rule 403 "creates a presumption of admissibility . . . when evidence is highly probative, even a large risk of unfair prejudice may be tolerable." *Cross*, 308 F.3d at 323.

In support of their argument, the defendants cite *United States v. Logan*, 49 F.3d 352, 358 (8th Cir. 1995), and *United States v. Gamory*, 635 F.3d 480, 493 (11th Circuit).  Both are easily distinguishable from the case at bar.  *Logan* was a narcotics case in which a defendant wanted to introduce an explicit recording between himself and his coconspirators to show his

coconspirator's demeanor. 49 F.3d at 358. The Eighth Circuit found that the evidence was of "only minimally probative" value, raised the "possibility of confusion of issues," was "cumulative," and was properly excluded for those reasons. *Id.* Unlike the recording in *Logan*, however, the recording in this case goes to the heart of the charged conduct.

Likewise, in *Gamory*, the evidence at issue was cumulative and had little probative value. There, the court of appeals held that the district court erroneously admitted a rap video that the court determined was cumulative and had minimal probative value, which was substantially outweighed by risk of unfair prejudice. *Id.* The court of appeals also held that because the evidence was cumulative, the error was harmless. *Id.*

Here, the risk of an adverse reaction by the jury does not "substantially outweigh" the probative value of the evidence, because the probative value of the recording, the subject of which is a charged Overt Act in the conspiracy, is extremely high.

In *United States v. Gartmon*, 146 F.3d 1015 (D.C. Cir. 1998), the defendant, who was convicted of securities fraud and money laundering, argued on appeal that the district court improperly admitted evidence that after a female accomplice attempted to withdraw from scheme, the defendant sexually assaulted her with a gun. The court of appeals concluded that the admission of the evidence, which constituted "direct evidence of Gartmon's knowing involvement in, and direction of, the scheme to defraud" was not an abuse of discretion, because the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice under Rule 403. *Id.* at 1020-21. The evidence in question here is more probative, and less prejudicial than the evidence admitted in *Gartmon*, where, unlike here, the charged conduct did not involve an assault.

- 11 -

Here, the recording is the best evidence to convey the exact words used by Fiocca to threaten the victim, and manner in which he said them. This evidence is relevant and necessary. The probative value of the recording of the assault is not outweighed in any way, much less substantially, by the danger of unfair prejudice.

## V.    There is No Basis to Justify Disclosure of the Identity of the Confidential Informant.

The government intends to introduce into evidence a clip of a telephone conference involving Dougherty, Local 98 business agents, and other Local 98 employees, that was held on August 24, 2020.  During the call, Dougherty made the following statements about the assault that had been committed five days earlier:

> The Casino, five hundred Building Trades members, there is a second shift, job's running well . . . You know you guys have heard that, you know we had a minor issue down there.  And just so you know.  It had nothing to do about the last name of the person who was involved.  It had everything to do with the position . . .
> Ok so we had an incident at the Casino.  And for those who don't know the story, and I heard a couple comments, which I ain't exactly thrilled with . . . And [the electrical contractor who is the victim in this case] was getting tired of paying Greg Fiocca.  So, I told him with all them things on his plate . . . I'm shocked that he paid attention to a steward.
> . . . So, when they dock the steward, not Greg, okay, and they made all kind of off-the-wall statement, okay, it had nothing to do with Greg it had everything to do with the steward.  So, when the steward had a little physical confrontation, allegedly with the superintendent, we weren't down there to make kumbaya.  F*** kumbaya.  F*** you want kumbaya become a f***ing Superintendent.  You're a f***ing business agents representing the stewards.  Who we appoint.  Right wrong or indifferent.  Okay?

As set forth in more detail in the Government's 404(b) Motion, Dougherty's misleading statements were clearly intended, among other things, to discourage anyone from challenging, or even questioning his decision to allow Fiocca to remain on the job site, even though Fiocca

had assaulted the project manager.

The meeting was recorded by a confidential informant who will not be called as a witness. Two Local 98 employees who participated in the call will authenticate the call. Both have a recollection of Dougherty making the statements quoted above, and both have identified him as the speaker. A witness from the FBI is prepared to testify, if necessary, that the recording was not edited or tampered with in any way. (The entire meeting, which lasted more than an hour, was recorded. This recording has been provided to defense counsel.)

This testimony is sufficient to authenticate the August 24, 2020 recording. *See, e.g., United States v. Davis*, 918 F.3d 397, 403–04 (4th Cir. 2019) (call with defendant recorded by informant properly authenticated by witness who was familiar with the voices of both individuals). Federal Rule of Evidence 901(b)(5) states that "[a]n opinion identifying a person's voice - whether heard first hand or through mechanical or electronic transmission or recording - based on hearing the voice at any time under circumstances that connect it with the alleged speaker" satisfies the authentication requirement. *See also United States v. Ligambi*, 891 F. Supp. 2d 709, 718 (E.D. Pa. 2012) (meeting recorded by informant who had passed away before trial sufficiently authenticated by "voice identification, surveillance team identification, and self-identification by various participants.")

The first step in determining whether the identity of an informant must be disclosed is to ascertain what need, if any, the defendant has alleged for disclosure. The burden is on the defendant to show a particularized need for disclosure. *United States v. Jiles*, 658 F.2d 194, 197 (3d Cir. 1981). To justify the disclosure of the identity of an informant, which is protected by a qualified privilege, the defendant must establish that: 1) the informant's potential testimony is highly relevant; 2) it might reveal entrapment; 3) it might create doubt on the

defendant's identity; and 4) the informant was the sole participant, other than the accused, in the charged transction. 658 F.2d at 198-99. The defendant must make this showing based on more than "mere speculation" of the usefulness of the informant's testimony. *See United States v. Pitts*, 2015 WL 619611, at *12 (E.D. Pa. Feb. 12, 2015).

The defendants have failed to meet their burden. The informant recorded a telephone conference in which there were 33 participants, all of whom were identified by a roll call at the beginning of the call. The recording was submitted to a taint review before it was provided to the prosecution team. The reviewer was told to redact any discussion of any legal matters, including any mention of the upcoming trial, and any mention of what any attorney may have told anyone on the call. None of four factors listed above have been implicated. The informant will not be called as a witness by the government to testify at any trial.

The prosecution team did not obtain any information concerning confidential defense strategy or conversations between the defendant and his counsel expected to be confidential, and took steps, such as the one described above, to make sure that did not happen.

If the defendants decline to accept this representation, the government can provide the Court with documents in camera that confirm that no privileged or defense strategy information was provided to the prosecution team.

The defendant has failed to establish a particularized need for disclosure of the identity of the informant. There is no legal of factual basis to justify the disclosure of the identity of the informant. Therefore, the defendants' arguments must be rejected.

## VI. Conclusion

The Indictment properly charges Hobbs Act extortion. The government has demonstrated by a preponderance of the evidence that Gregory Fiocca's statements of August

19, 2020, were made during and in furtherance of the charged conspiracy. The probative value of the recording of the August 19, 2020 assault is not outweighed by the risk of undue prejudice. There is no legal or factual reason to justify revealing the identity of the confidential informant who recorded the August 24, 2020 telephone conference. For all these reasons, the defendants' motions should be denied.

Respectfully submitted,

JENNIFER ARBITTIER WILLIAMS
United States Attorney

MICHELLE MORGAN
Assistant United States Attorney
Chief, Corruption and Labor Racketeering
Section

/s/ Frank R. Costello, Jr.
FRANK R. COSTELLO, JR.
JASON GRENELL
Assistant United States Attorneys

Dated:   4/25/22

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date, I electronically filed the foregoing response

with the Clerk of the Court using the CM/ECF system, which will send notification of such

filing to the attorneys of record for the defendants, who are identified below.

Henry Hockeimer
Counsel for Defendant John Dougherty

Rocco Cipparaone
Counsel for Defendant Gregory Fiocca

/s/ Frank R. Costello, Jr.
FRANK R. COSTELLO, JR.
Assistant United States Attorney

Dated: 4/25/22